153 So. 767

### GAY et al. v. STATE et al.

### 5 Div. 175.

Supreme Court of Alabama.

March 15, 1934.

Hooton & Hooton and H. M. Brittain, all of Roanoke, for appellants.

Thos. E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for appellees.

THOMAS, Justice.

The appeal is from a judgment fixing the valuation for the purpose of ad valorem taxes of a hospital owned and operated by a private individual.

. The property had not been assessed for taxation, and under the authority of section 39 of the Act of 1923 (Gen. Acts 1923, pp. 152, 175; Revenue Compilation 1929, § 162) the tax assessor made the assessment as an escape for the years 1928, 1929, 1930, 1931, and 1932. The trial in the circuit court excluded the tax year of 1932, and the jury found for the state and county as to and for the years 1930 and 1931, and for the defendants-appellants for the years 1928 and 1929.

The defendants-appellants claimed that the hospital was not subject to taxation because it was a charitable institution, basing that exemption claim on section 91 of the Constitution, subdivision (2) of section 3022, Code of 1923, and the Act of 1923, Gen. Acts of 1923, pp. 152, 153, section 2, subdivision (A1). The real question for decision is: What is the meaning of the words "purely charitable" as used in section 91 of the Constitution, or "charity patients" as used in section 3022, subdivision (2), of the Code of 1923, and the act of 1923, Acts 1923, pp. 152, 153, § 2, subdivision (A1)?

█ The assessment in this case was made under the authority of the act of 1923 Acts 1923, pp. 152, 175, § 39 (Union Central Life Ins. Co. v. State ex rel. Whetstone, Tax Assessor, 226 Ala. 420, 147 So. 187), providing that, whenever the tax assessor shall discover that any property has escaped taxation in any assessment within five years next preceding the current year, he shall list, return, and value the same, adding the penalty provided by statute. Notice was given as provided, there was protest by the taxpayer, and, under the provisions of section 162 of the Revenue Laws 1929, pp. 113, 114—"The property owner may appeal from the assessment to the circuit court of the county in which the property is located at the next regular session of such court after the assessment is made final by the tax assessor, and such property owner shall give bond as provided herein for tax cases appealed to the circuit court,"— an appeal was taken from the tax board to the circuit court.

In sections 59, 60, and 61 of the Revenue Act of 1923 (Gen. Acts 1923, pp. 152, 182, 183) there are pertinent provisions; section 61 providing in part: "The trial upon appeals to the circuit court shall be de novo and the court shall render a judgment ascertaining and fixing the assessable value of property involved." Gen. Acts 1923, p. 183.

Under these provisions the several appeals were taken. The language is broad enough to secure a review or rather a trial of the issues of fact de novo in the circuit court, as was done in this case; the several pertinent provisions of the law are to be considered in pari materia. Union Central Life Ins. Co. v. State ex rel. Whetstone, Tax Assessor, supra.

█ The assessment and levy of taxes is primarily a legislative function, and, when the board of review, as set up by the Legislature, hears tax cases and fixes the value of property for taxation purposes, it acts as a court of limited jurisdiction, and may be properly termed a part of the tax-assessing machinery of the state provided by the Legislature. In hearing the case de novo on appeal to the circuit court, the record of the board of review or of the tax commission or of the tax assessor is a due appearance on the part of the state in that court, and makes a prima facie case until evidence on the part of the taxpayer shows either (1) that the property is exempt absolutely, or (2) that it is of less value than that fixed in the assessment, or shows its correct value for the levy of the ad valorem tax imposed by the law. There is no provision of law requiring formal information or other formal pleading (than that before the board of review) to be filed by the solicitor or the attorney representing the state. The cases of Daffin, Tax Assessor, v. Scotch Lumber Co., 226 Ala. 33, 145 So. 452, Union Central Life Ins. Co. v. State ex rel. Whetstone, Tax Assessor, 226 Ala. 420, 147 So. 187, and State of Alabama et al. v. Mobile and Ohio Railroad Co. (Ala. Sup.) 154 So. 91,[1] indicate the required procedure in the several cases dealt with; hence, in this case, by the appearance and the introduction in evidence of the assessment made for the five years in question, a question of facts for the jury is presented.

█ There was a suggestion in this case that, because the tax officials had failed to assess this property in the previous years while assessing other property of the taxpayer, that failure and inference to be drawn therefrom, constituted an ascertainment that the same was exempt. There is no record that the property was returned by that taxpayer and claimed and actually allowed as exempt by the tax assessor, the board of review, or any other competent, lawful author-

ity. The failure to so return the property and the failure to claim it as exempt would not operate as an estoppel or any obstacle in the nature of a judicial ascertainment of the question presented by this proceeding. The question of the exemption of property is one of law when the facts of its use are determined. And these facts the parties have the right to try under the law, for each tax year, and within the time provided and recognized by the statutes and decisions. Union Central Life Ins. Co. v. State ex rel. Whetstone, Tax Assessor, 226 Ala. 420, 147 So. 187. The case of Anniston City Land Company v. State, 160 Ala. 253, 48 So. 659, is not contrary to the views we have expressed.

■ It is true that, once the officers proceed to a valuation of the property, it cannot be disturbed by the state during that tax year. State v. Doster-Northington Drug Co., 196 Ala. 447, 71 So. 427; Union Central Life Ins. Co. v. State ex rel. Whetstone, Tax Assessor, supra; Perry County v. Selma, Marion & Memphis Railroad Company, 58 Ala. 546; State ex rel. Tallapoosa County v. Butler, State Tax Com'r, 227 Ala. 212, 149 So. 101.

■ It is also true, that the exemption in question under the Constitution is self-executing (Anniston City Land Company v. State, 160 Ala. 253, 48 So. 659) when the facts of its use are indisputable (Johnson v. Holifield, 79 Ala. 423, 58 Am. Rep. 596; Dunn v. Ellisor, 225 Ala. 15, 17, 141 So. 700; Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381). The original purpose will not control; it is "the use (under the Constitution and statute) during the current tax year" for which the assessment is made that determines the exemption, and this fact was for the jury to find under this phase of the case.

■ Considering the insistences of counsel, we may again observe that appellants base their claim of exemption (1) on section 91 of the Constitution, which says "The legislature shall not tax the property, real or personal * * * to the extent of one acre * * * with the buildings thereon, when same are used exclusively for religious worship, for schools, or for purposes purely charitable;" (2) on subdivision (1) of section 3022 of the Code, which is, in effect, almost a repetition of the exemption set out in section 91 of the Constitution, so far as here pertinent; and (3) that exemption is likewise claimed under section 2, subdivision (A1), of the Act of 1923 (Gen. Acts 1923, p. 153), as follows: "All property, real or personal, used exclusively for hospital purposes, to the amount of twenty thousand dollars, where such hospitals maintain wards for charity patients and give treatment to such patients, provided that the treatment of charity patients constitutes at least fifteen per cent. of the business of such hospital."

Under the constitutional proviso, did the defendants-appellants sustain the burden of proof? The testimony tended to show that the larger portion of the patients who came to the hospital were "pay patients" and patients who actually paid for services rendered them in the hospital; that a number of patients termed "charity patients" did not pay for medical services, yet (according to the testimony of the former head nurse) were charged with their fees, which were collected when possible. It thus becomes a question of fact for the jury to determine whether the patients who did not pay should be classified as "purely charitable" or "charity patients," or whether they come under the class of patients who left with bills payable outstanding. Under the constitutional provision (section 91, Constitution) and the provision of subdivision (1) of section 3022, Code, a question of fact for jury decision was presented as to "the use" of the hospital as a "purely charitable" institution during the course of the years in question and by the conduct of that business; and the defendants have failed to sustain the burden of proof.

■ Defendants' counsel further insist that the general affirmative charge should have been given, in that the institution was shown to have been used exclusively as a hospital of less than $20,000 in value, and that 15 per cent. of its average annual gross business for the five-year period was devoted to the charitable purpose of that business. Gen. Acts 1923, pp. 152, 153, § 2, subdivision (A1). The statutory definition of this exemption is that it gave "treatment to such patients" (charity patients), and that the treatment of such patients constituted "at least fifteen per cent. of the business of such hospital."

It is true, the statute uses the words, "maintain wards for charity patients and give treatment to such patients." This was not an exemption that was dependent on the fact that *separate rooms, departments, or wards were set apart and kept exclusively for charity patients who were treated as such patients in such wards only.* The legislative intent is illustrated and defined by the last expression of the statute, that *"the treatment of charity patients constitutes at least fifteen per cent. of the business of such hospital,"* irrespective of the fact that *separate* rooms,

departments or wards were or were not maintained. (Italics supplied.) Such is the obvious legislative intent, necessarily imputed in the statute, and this is consistent with the mode of operation of all hospitals, whether in large or small communities.

The two Texas cases cited, Barnes v. Providence Sanitarium (Tex. Civ. App.) 229 S. W. 588, and Scott v. All Saints Hospital (Tex. Civ. App.) 203 S. W. 146, hold that the original purpose of a hospital as a charitable institution is not destroyed by the mere fact that certain patients are admitted and pay for the services there rendered. This bears analogy to the proviso defining the statute, that "the treatment of charity patients constitutes at least fifteen per cent. of the business of such hospital."

The statute contained its own definition as to the percentage, defining the use as the conduct of the "business of such hospital." The five-year basis of this hospital as presented by the record is a good picture or definition of the use of that business and the purpose to which the hospital was devoted, which speaks of its liability vel non for the tax years for which the assessment was sought to be made as an escape from taxation under the statute. Union Central Life Ins. Co. v. State ex rel. Whetstone, Tax Assessor, 226 Ala. 420, 147 So. 187.

The evidence has been carefully examined for the period for which the assessment was sought to be made as an escape. The business of pay patients amounted to $44,608.84; that of charity patients, $14,680.09—or an aggregate of $59,288.93. The percentages of 100 per cent. of that aggregate business were: Pay patients 75.24 per cent., and charity patients 24.76 per cent. Otherwise stated, the per cent. of pay to charity patients was 303.87 per cent. and the per cent. of charity to pay patients was 32.91 per cent. It is apparent from this that for the years sought to be assessed for taxes, the hospital was within the protection of subdivision (2) of section 3022 of the Code. And affirmative instruction requested by the defendants should have been given.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

BROWN, Justice (dissenting).

It is well settled that one claiming exemption from taxation must bring his case clearly within the provisions of the Constitution and statute providing for such exemption, strictly construed. State v. Tuscaloosa Cotton Seed Oil Co., 208 Ala. 610, 95 So. 52; State ex rel. Smith, Atty. Gen., v. Elba Bank & Trust Co., 18 Ala. App. 253, 91 So. 917; Ex parte Elba Bank & Trust Company, 207 Ala. 711, 91 So. 922; Barnes, Sheriff, v. Jones, 139 Miss. 675, 103 So. 773, 43 A. L. R. 673.

The majority opinion ignores the settled rule of construction, and sustains the exemption under section 3022 of the Code of 1923, which provides: "The following property and persons shall be exempt from ad valorem taxation and none other: * * * (2) All property, real or personal, used exclusively for hospital purposes, to the amount of twenty thousand dollars, where such hospitals *maintain wards for charity patients* and give treatment to such patients, provided that the *treatment of charity* patients constitutes at least fifteen per cent. of the business of such hospital," taking as the basis of the exemption the gross income as disclosed by charges on the books for treatment of all patients over a term of five years, and treating bad or uncollectible charges as charity. (Italics supplied.)

My judgment is, that the clear meaning of the quoted provision is that the hospital must maintain wards for the treatment of charity patients, where they are treated free of charge, and the percentage must be calculated on a per capita basis. In other words, 15 per cent. of the patients treated must be treated wholly without charge or cost to such patients.

Moreover, if the basis for the exemption set up by the majority opinion is correct, the exemption should be calculated for each tax year. If the calculation can be based on a five-year period, then, of course, it may be based on any number of years, with the result that most any institution may escape taxation.

There is evidence going to show that the property was not used "exclusively" for hospital purposes, and this evidence was sufficient to justify the court in refusing the affirmative charge.