Is the use of property owned by a nonprofit corporation organized under the laws of Alabama and operated and used by that nonprofit corporation exclusively as a hospital a use that is "exclusively" or "purely" charitable, so as to qualify for an exemption from the payment of ad valorem taxes under Amendment 373(k) of the Constitution of Alabama of 1901 and Ala. Code 1975, § 40-9-1(1)? We hold that it is; therefore, we affirm the judgment of the trial court.
Amendment 373(k) provides in pertinent part that "property devoted exclusively to . . . charitable purposes" is exempt from ad valorem taxation. Section 40-9-1(1) states in pertinent part that "all property, real and personal, used exclusively for . . . purposes purely charitable" is exempt from ad valorem taxation. Vaughan Regional Medical Center, Inc. ("Vaughan"), and Baptist Medical Center ("Baptist") are nonprofit corporations organized and existing under the laws of Alabama and they are qualified as "charitable organization[s]" under the internal Revenue Code ("I.R.C."), 26 U.S.C. § 501(c)(3). They are, therefore, exempt from liability for federal income taxes, as well as for liability for state income taxes. See Ala. Code 1975, § 40-18-32(a)(11). Vaughan is located in Selma; Baptist is located in Montgomery. After many years of interpreting the state constitutional and statutory exemptions is applying to Vaughan and to Baptist, the taxing authorities in the City of Selma and in Dallas and Montgomery Counties, relying on a change in position by the Alabama Department of Revenue, assessed Vaughan and Baptist for ad valorem taxes. Vaughan filed this action in the Montgomery Circuit Court against Hollis Curry, Selma's tax collector; Dale R. Curry, the tax assessor for Dallas County; Tammy Jones King, the tax collector for Dallas County; and George Mingledorff, the Alabama commissioner of revenue, seeking declaratory and injunctive relief. Baptist was allowed to intervene, naming as defendants Sarah Norred, the tax assessor for Montgomery County; and Marvin Driver, the tax collector of Montgomery County. There is no challenge to the parties plaintiff or parties defendant. The defendants moved to dismiss, arguing that Vaughan and Baptist had failed to exhaust their administrative remedies and, therefore, that the trial court lacked subject matter jurisdiction. After a hearing on the motion and the merits, the trial court denied the motion to dismiss and held that nonprofit charitable hospitals exempt from income taxation under I.R.C. § 501(c)(3) were exempt from ad valorem taxation in Alabama. The trial court ruled that Vaughan and Baptist were entitled to a complete exemption from the payment of ad valorem taxes on their real and personal property used for the corporate purpose of operating their hospital facilities, and it enjoined the defendants from assessing any ad valorem taxes on any of the property owned by Vaughan and Baptist that was at issue in the case before the court. The defendants appealed.
Initially, we note that Vaughan and Baptist challenged the tax assessments against them on the ground that they were void and illegal. Questions of law and of statutory and constitutional construction preponderate over questions of fact in this case; therefore, Vaughan was not required to exhaust administrative remedies before filing this action, and Baptist was not required to exhaust administrative remedies before intervening. See Eagerton v. Williams, 433 So.2d 436, 449
(Ala. 1983); Graves v. McDonough, 264 Ala. 407, 88 So.2d 371
(1956). The trial court had subject matter jurisdiction.
The dispositive issue is whether the property sought to be taxed, which is being used exclusively as a hospital, is being used exclusively in charitable pursuits. If it is, then there is no question that Vaughan and Baptist are exempt from ad valorem taxation under the clear wording of Amendment 373(k) and § 40-9-1(1).
It is not disputed that Vaughan (and its predecessor corporations) and Baptist were created for charitable purposes — to do all things necessary to operate hospital facilities for the care of all persons within the territories served by the facilities and to furnish healthcare services to persons otherwise unable *Page 417 
to pay. Vaughan's articles of incorporation state in pertinent part as follows:
"The purpose of the Corporation shall be:
 "A. To promote and advance charitable, scientific, and educational purposes of the nature set forth in and pursuant to Section 501(c)(3) of the Internal Revenue Code of 1954, as amended, its Regulations or the corresponding provision of any applicable future United States Internal Revenue Law or Regulations (hereafter collectively referred to as the 'Code'); including without limitation, to make distributions to organizations under Section 501(c)(3) of the Code;
 "B. Without in any way limiting the foregoing purposes, to provide medical, hospital and nursing home care, medical education and research and to engage in all activities necessary or incidental thereto;
 "C. To operate exclusively for charitable, scientific, and educational purposes; and
 "D. To qualify as an organization exempt from federal taxation under Section 501(c)(3) of the Code, and as a public charity under Section 509(a) of the Code."
Baptist is sponsored by the Montgomery Baptist Association, an association of 54 Baptist churches located in Montgomery, Elmore, and Lowndes Counties. Its certificate of incorporation in pertinent part provides:
 "The purposes for which this Corporation is formed are purely benevolent, charitable, educational, and religious, and not for financial gain, but nothing herein contained shall be construed to prohibit such reasonable charges for the care of patients who are able to pay for hospital services as may be determined by the Directors or such executive officers as the Directors may designate, to be reasonable and proper and necessary to defray the necessary expenses of the operation of the said Corporation and the expenses of caring for charity patients. It is organized to acquire or erect, and to equip, conduct and maintain on the broadest humanitarian principles, a hospital or hospitals, and a school or schools of nursing, to care for the sick and injured, and to educate and train persons in the care of the sick and injured, issuing to such persons diplomas upon graduation, and erecting and conducting such hospital or hospitals, school or schools, or other institutions as may be necessary or desirable to carry out all of said purposes to the end, also that the souls of men may be healed."
According to the incorporating documents of both Vaughan and Baptist, neither institution pays any of its net earnings to its directors, officers, or other private individuals and, upon dissolution, corporate assets, after discharge of liabilities, are to be transferred to other charitable organizations.
Relying on Most Worshipful Grand Lodge of Free AcceptedMasons of Alabama v. Norred, 603 So.2d 996 (Ala. 1992), and Gayv. State, 228 Ala. 253, 153 So. 767 (1934), the defendants contend that not all of the property used by Vaughan and Baptist in the operation of their hospital facilities is devoted exclusively to a charitable purpose. Specifically, they point out that Baptist operates a parking deck, a cafeteria, and a gift shop, all of which generate income, and that both Vaughan and Baptist charge fees to, and receive payment from, the majority of their patients, either directly from the patients themselves or indirectly through private health insurers or government programs such as Medicare and Medicaid. Notwithstanding the nonprofit status of Vaughan and Baptist, generating income in this manner, according to the defendants, cannot be reconciled with Vaughan and Baptist's stated charitable purposes. Stated differently, the defendants' position is basically that Vaughan and Baptist do not qualify for the total tax exemptions set out in Amendment 373(k) and §40-9-1(1) because they raise income to support their facilities by charging their patients who are financially able to pay. The defendants argue, instead, that Vaughan and Baptist may seek to qualify for a partial tax exemption under § 40-9-1(2), which provides:
 "The following property and persons shall be exempt from ad valorem taxation and none other: *Page 418 
". . . .
 "All property, real or personal, used exclusively for hospital purposes, to the amount of $75,000, where such hospitals maintain wards for charity patients or give treatment to such patients; provided, that the treatment of charity patients constitutes at least 15 percent of the business of such hospitals; provided further, that such hospital need not be assessed for taxation if the owner or manager shall file with the county tax assessor wherein such hospital is located within the time allowed for assessing such property for taxation a certificate that such hospital has done 15 percent charity work in the preceding tax year; and further provided, that such hospital through its owner or manager shall have until the expiration of the preceding tax year to class its work and ascertain whether or not such hospital has done 15 percent of its treatment of patients as charity work."
This provision, according to the defendants, applies specifically to all hospitals, profit or nonprofit, that generate income from their facilities through the operation of such things as gift shops, cafeterias, etc., or that charge the majority of their patients for services rendered. After examining the record and considering the briefs, as well as certain revenue rulings from the Internal Revenue Service ("I.R.S.") and decisions from other jurisdictions, we must disagree.
In order to qualify for the total ad valorem tax exemption provided by Amendment 373(k) and § 40-9-1(1), Vaughan and Baptist must use their property exclusively for charitable purposes or, as this Court stated in Norred, supra, at 1000, they must use it "solely, only, or wholly for a . . . charitable purpose." In Henderson v. Troy Bank Trust Co.,250 Ala. 456, 466, 34 So.2d 835, 841 (1948), this Court, quotingJohnson v. Holifield, 79 Ala. 423, 425 (1885), discussed the nature of a "charity":
 " 'A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.' "
This definition is consistent with the definition of "charity" set out in Black's Law Dictionary (6th ed. 1990):
 "A gift for, or institution engaged in, public benevolent purposes. A gift for benefit of indefinite number of persons under influence of religion or education, relief from disease, assisting people to establish themselves in life, or erecting or maintaining public works. . . . A 'charity,' in the absence of legislative definition, is attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources and without hope or expectation, if not with possible abnegation, of gain or profit by donor or by instrumentality of charity."
As noted earlier, the incorporating documents of both Vaughan and Baptist clearly charted a charitable course for these nonprofit institutions. The net earnings of Vaughan and Baptist do not inure to the benefit of any director, officer, or private individual, and the assets of both institutions are earmarked for charitable use upon their dissolution. Both Vaughan and Baptist have an "open door" policy in that they do not turn away patients who are unable to pay for medical services. The record indicates that the income generated by Vaughan and Baptist, including the income generated by those patients able to pay, serves to offset the expense of running the facilities and caring for indigent patients.
It is significant, we think, that both Vaughan and Baptist have satisfied the I.R.S. that their charitable status entitles them to be exempt from federal income taxation. I.R.C. § 501(c)(3) states in pertinent part *Page 419 
that the income tax exemption is available to "[c]orporations . . . organized and operated exclusively for . . . charitable . . . purposes." The I.R.S. has interpreted § 501(c)(3), insofar as it applies to hospitals. Revenue Ruling 56-185 states in pertinent part:
 "The only ground upon which a hospital may be held to be exempt under section 501(c)(3) of the Code is that it is organized and operated primarily for educational, scientific or public charitable purposes. Usually, the ground for exemption is that it is organized and operated for public charitable purposes. The Supreme Court of the United States in Helvering v. Susan D. Bliss, et al., 293 U.S. 144 [55 S.Ct. 17, 79 L.Ed. 246], Ct. D. 884, CB. XIII-2, 191 (1934), held that the provisions of law granting exemption of income devoted to charity are liberalizations of the law in the taxpayer's favor, or begotten from motives of public policy, and are not to be narrowly construed. Thus, in regard to hospitals and similar organizations, the Internal Revenue Service takes the position that the term 'charitable' in its legal sense and as it is used in section 501(c)(3) of the Code contemplates an implied public trust constituted for some public benefit, the income or beneficial interest of which may not inure to the benefit of any private shareholder or individual.
 "In order for a hospital to establish that it is exempt as a public charitable organization within the contemplation of section 501(c)(3), it must, among other things, show that it meets the following general requirements:
 "1. It must be organized as a non-profit charitable organization for the purpose of operating a hospital for the care of the sick. A non-profit hospital chartered only in general terms as a charitable corporation can meet the test as being organized exclusively for charitable purposes. See Commissioner v. Battle Creek, Inc., 126 F.2d 405.
 "2. It must be operated to the extent of its financial ability for those not able to pay for the services rendered and not exclusively for those who are able and expected to pay. It is normal for hospitals to charge those able to pay for services rendered in order to meet the operating expenses of the institution, without denying medical care or treatment to others unable to pay. The fact that its charity record is relatively low is not conclusive that a hospital is not operated for charitable purposes to the full extent of its financial ability. It may furnish services at reduced rates which are below cost, and thereby render charity in that manner. It may also set aside earnings which it uses for improvements and additions to hospital facilities. It must not, however, refuse to accept patients in need of hospital care who cannot pay for such services. Furthermore, if it operates with the expectation of full payment from all those to whom it renders services, it does not dispense charity merely because some of its patients fail to pay for the services rendered.
". . . .
 "4. Its net earnings must not inure directly or indirectly to the benefit of any private shareholder or individual. This includes the use by or benefit to its members of its earnings by way of a distribution of profits, the payment of excessive rents or excessive salaries, or the use of its facilities to serve their private interests. If provision is made in the bylaws for dividends, exemption will not be allowed even though no dividends have been declared. Exemption will not be defeated, however, merely because the shareholders or members might possibly at some future date share in the assets upon dissolution in the absence of a case of mala fides where there appears to be a plan on the part of the shareholder or individual to acquire assets on the dissolution of the corporation."
Later, in Revenue Ruling 69-545, the I.R.S. addressed the § 501(c)(3) income tax exemption in the context of two specific examples of nonprofit hospital corporations. In one of the examples, the institution was a community hospital and operated a full-time emergency room having an "open door" policy for emergency treatment, but which otherwise ordinarily limited admissions to those who could pay the cost of their hospitalization, either themselves or through private health insurance or with the assistance of public *Page 420 
programs such as Medicare or Medicaid. The I.R.S. noted:
 "Section 501(c)(3) of the Code provides for exemption from Federal income tax of organizations organized and operated exclusively for charitable, scientific, or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual.
 "Section 1.501(c)(3)-(1)(d)(1)(ii) of the regulations provides that an organization is not organized or operated exclusively for any purpose set forth in section 501(c)(3) of the Code unless it serves a public rather than a private interest.
 "Section 1.501(c)(3)-(1)(d)(2) of the regulations states that the term 'charitable' is used in section 501(c)(3) of the Code in its generally accepted legal sense.
 "To qualify for exemption from Federal income tax under section 501(c)(3) of the Code, a non-profit hospital must be organized and operated exclusively in furtherance of some purpose considered 'charitable' in the generally accepted legal sense of that term, and the hospital may not be operated, directly or indirectly, for the benefit of private interests.
 "In the general law of charity, the promotion of health is considered to be a charitable purpose. Restatement (Second), Trusts, sec. 368 and sec. 372; IV Scott on Trusts (3rd ed. 1967), sec. 368 and sec. 372. A non-profit organization whose purpose and activity are providing hospital care is promoting health and may, therefore, qualify as organized and operated in furtherance of a charitable purpose. If it meets the other requirements of section 501(c)(3) of the Code, it will qualify for exemption from Federal income tax under § 501(a).
 "Since the purpose and activity of Hospital A, apart from its related educational and research activities and purposes, are providing hospital care on a non-profit basis for members of its community, it is organized and operated in furtherance of a purpose considered 'charitable' in the generally accepted legal sense of that term. The promotion of health, like the relief of poverty and the advancement of education and religion, is one of the purposes in the general law of charity that is deemed beneficial to the community as a whole even though the class of beneficiaries eligible to receive a direct benefit from its activities does not include all members of the community, such as indigent members of the community, provided that the class is not so small that its relief is not of benefit to the community. Restatement (Second), Trusts, sec. 368, comment (b) and sec. 372, comments (b) and (c); IV Scott on Trusts (3rd ed. 1967), sec. 368 and sec. 372.2. By operating an emergency room open to all persons and by providing hospital care for all those persons in the community able to pay the costs thereof either directly or through third party reimbursement, Hospital A is promoting the health of a class of persons that is broad enough to benefit the community.
 "The fact that Hospital A operates at an annual surplus of receipts over disbursements does not preclude its exemption. By using its surplus funds to improve the quality of patient care, expand its facilities, and advance its medical training, education, and research programs, the hospital is operating in furtherance of its exempt purposes.
 "Furthermore, Hospital A is operated to serve a public rather than a private interest. Control of the hospital rests with its board of trustees, which is composed of independent civic leaders. The hospital maintains an open medical staff, with privileges available to all qualified physicians. Members of its active medical staff have the privilege of leasing available space in its medical building. . . . It operates an active and generally accessible emergency room. These factors indicate that the use and control of Hospital A are for the benefit of the public and that no part of the income of the organization is inuring to the benefit of any private individual nor is any private interest being served.
 "Accordingly, it is held that Hospital A is exempt from Federal income tax under section 501(c)(3) of the Code."
In Revenue Ruling 83-157, the I.R.S. indicated that a hospital of the kind addressed in *Page 421 
Revenue Ruling 69-545 would be entitled to the income tax exemption under § 501(c)(3) even if it did not offer emergency room services because of a determination by state regulatory authorities that such a service was unnecessary:
 "The hospital in this case does not operate an emergency room because the state health planning agency has made an independent determination that this operation would be unnecessary and duplicative. Consequently, the hospital is unable to rely on the operation of an emergency room open to all regardless of ability to pay as strong evidence that the hospital promotes the health of a sufficiently broad class of persons to benefit the community. Other significant factors, however, including a board of directors drawn from the community, an open medical staff policy, treatment of persons paying their bills with the aid of public programs like medicare and medicaid, and the application of any surplus to improving facilities, equipment, patient care, and medical training, education, and research, indicate that the hospital is operating exclusively to benefit the community."
Based on the evidence before us, we think it clear that Vaughan and Baptist have satisfied the I.R.S.'s requirement that their property be used exclusively for a charitable purpose. Contrary to the defendants' urgings, we can discern no logical basis for imposing a more stringent requirement on nonprofit hospitals seeking the ad valorem tax exemption under Amendment 373(k) and § 40-9-1(1). In fact, the I.R.S.'s position concerning the primary issue in this case — whether the receipt of payment from those able to pay defeats a hospital's charitable purpose — is consistent with the position this Court has taken in the past. See, e.g., Moore v.Walker County, 236 Ala. 688, 185 So. 175 (1938), wherein this Court, addressing a question of governmental immunity, noted:
 "So, then, in the operation of a hospital, where its needy might receive care and medical attention, Walker County was but performing a governmental duty, and exercising a governmental power, expressly conferred by the Legislature. [Citations omitted.]
 "The fact that the county required or received pay, from such of the patients in the hospital as are able to pay, cannot serve to destroy the charitable character or purposes of the hospital, nor convert it into a proprietary institution. It still remained a charitable hospital, operated as a governmental institution. The evident purpose of allowing the hospital to admit patients who were able to pay, and to charge admissions fees to such persons, was to reimburse the county for expenditures. It is to be noted that all amounts which might be received from such sources were to be applied to defraying the expenses of operating said hospital."
236 Ala. at 691, 185 So. at 178. See, also, Clark v. MobileCounty Hospital Board, 275 Ala. 26, 151 So.2d 750 (1963). In accord, see Sebastian County Equalization Board v. WesternArkansas Counseling Guidance Center, Inc., 296 Ark. 207,752 S.W.2d 755 (1988); Richards v. Iowa Department of Revenue,414 N.W.2d 344 (Iowa 1987); Bethesda Foundation v. Board of Reviewof Madison County, 453 N.W.2d 224 (Iowa App. 1990); CommunityMemorial Hospital v. City of Moberly, 422 S.W.2d 290 (Mo. 1967);Jackson County v. State Tax Commission, 521 S.W.2d 378
(Mo. 1975); Callaway Community Hospital Association v.Craighead, 759 S.W.2d 253 (Mo.App. 1988); Medical CenterHospital of Vermont, Inc. v. City of Burlington, 152 Vt. 611,566 A.2d 1352 (1989); Evangelical Lutheran Good SamaritanSociety v. Gage County, 181 Neb. 831, 151 N.W.2d 446 (1967);Harvard Community Health Plan, Inc. v. Board of Assessors ofCambridge, 384 Mass. 536, 427 N.E.2d 1159 (1981); DowntownHospital Association v. Tennessee State Board of Equalization,760 S.W.2d 954 (Tenn.App. 1988). All of these cases suggest a trend toward defining a "charity" broadly, in terms of an act of kindness or benevolence, not narrowly in terms of the specific revenue-producing methods used by the organization. This trend is noted in 71 Am.Jur.2d State and Local Taxation, § 373 (1972):
 "A general trend of authority in cases determining the charitable character of institutions *Page 422 
for tax exemption veers away from the old concept that charity is confined to the 'free' care of the indigent, and toward the idea of charity as comprehending all humanitarian activities even though recipients may be able to pay at least in part for the benefits. Thus, a charitable institution does not lose its character and consequent tax exemption merely because recipients of its benefits who are able to pay are required to do so, where funds derived in this manner are devoted to the charitable purposes of the institution. The exemption has been held to apply even if all or generally all the beneficiaries are required to pay, at least provided the charges are nominal or below the actual cost of the benefits conferred, but held not to apply, according to some cases, if they are remunerative in character, and, in some instances, if they are set at usual, commercial, or substantial rates. But even the realization of an operating income in excess of the cost of the services provided has been held not to destroy the tax exempt status where the excess does not inure to anyone's individual profit, but is devoted to the charitable purposes of the institution. And in fact it has been said that to hold that because a charitable institution's receipts for a given period exceed its expenditures, this nullifies the tax exemption, would be to penalize efficiency and to cause the institution's eligibility for exemption to vary from year to year."
See, also, 15 Am.Jur.2d Charities, § 183 (1976), wherein it is stated:
 "The word 'hospital' in its popular usage denotes a charitable institution; it is only where income may be used for the profit of the owners that a hospital corporation ceases to be a charity. A corporation the object of which is to provide a general hospital for sick persons, having no capital stock or provision for making dividends or profits, deriving its funds mainly from public and private charity and holding them in trust for the object of sustaining the hospital, and conducting its affairs for the purpose of administering to the comfort and healing of the sick, without expectation or right on the part of those immediately interested in the corporation to receive compensation for their own benefit, is a public charitable institution. Moreover, the facts that a corporation established for the maintenance of a public hospital, by its rules requires of its patients payment for their board according to their circumstances and the accommodation they receive, that no person has individually a right to demand admission, and that the trustees of the hospital determine who are to be received, do not render it the less a public charity."
Concerning the defendants' reliance on Gay v. State, supra, and their contention that Vaughan and Baptist could qualify only for the partial tax exemption set out in § 40-9-1(2), we agree with Vaughan and Baptist that § 40-9-1(2) is applicable to for-profit hospitals, a portion of whose property is used for charitable purposes. However, hospitals such as Vaughan and Baptist, whose overall objective is to provide health services to the public at large, with no reservation as to those who cannot afford to pay and with no eye toward the attainment of profit or private advantage, qualify for the general ad valorem tax exemptions contained in Amendment 373(k) and § 40-9-1(1). In Gay v. State, this Court was called on to construe Art. IV, § 91, of the Alabama Constitution, a tax exemption provision similar to the one set out in Amendment 373(k) and subdivision (1) of § 3022 of the 1923 Code (predecessor to § 40-9-1(1)). Section 91 provides an ad valorem tax exemption for property used "for purposes purely charitable." For all that appears from the opinion, the hospital in Gay v. State was a privately owned, for-profit institution, the majority of whose patients were able to, and actually did, pay for the hospital's medical services. However, the hospital claimed that it qualified for the § 91 and § 3022 exemptions because it had provided services to a number of patients who, although billed for those services, could not pay. The question of the exemption was submitted to a jury, which found against the hospital as to two of the five years in which tax assessments were made. In an attempt to ascertain the meaning of the words "purely charitable," as used in § 91 and § 3022, this Court stated: *Page 423 
 "Under the constitutional proviso, did the defendants-appellants [the hospital] sustain the burden of proof? The testimony tended to show that the larger portion of the patients who came to the hospital were 'pay patients' and patients who actually paid for services rendered them in the hospital; that a number of patients termed 'charity patients' did not pay for medical services, yet (according to the testimony of the former head nurse) were charged with their fees, which were collected when possible. It thus becomes a question of fact for the jury to determine whether the patients who did not pay should be classified as 'purely charitable' or 'charity patients,' or whether they come under the class of patients who left with bills payable outstanding. Under the constitutional provision (section 91, Constitution) and the provision of subdivision (1) of section 3022, Code, a question of fact for jury decision was presented as to 'the use' of the hospital as a 'purely charitable' institution during the course of the years in question and by the conduct of that business; and the defendants have failed to sustain the burden of proof."
228 Ala. at 256, 153 So. at 770. After examining Gay v. State, we conclude that the result reached in that case was the correct one, for the undisputed evidence clearly showed that the privately owned, for-profit hospital involved in that case was not engaged in a "purely charitable" pursuit. However, we fail to see why a jury was required to determine whether the hospital was a "purely charitable" institution. Given the undisputed evidence that the hospital was not a "purely charitable" institution, whether the hospital qualified for the exemption under § 91 and § 3022 was a legal issue that should have been decided by the court. In any event, we are not persuaded that Gay v. State correctly states Alabama law on the question whether a nonprofit hospital's receipt of payment from patients financially able to pay defeats the charitable purpose for which that hospital was organized. Therefore, to the extent that it is inconsistent with this opinion, Gay v. State is overruled.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.