Two questions were properly preserved for our review: First, is the use of property owned by a nonprofit corporation organized under the laws of Alabama and operated and used by that nonprofit corporation exclusively as an apartment complex for low-income and fixed-income elderly a use that is "exclusively" or "purely" charitable, so as to qualify for an exemption from the payment of ad valorem taxes under Amendment 373(k) of *Page 415 
the Constitution of Alabama of 1901 and Ala. Code 1975, § 40-9-1(1)? We conclude that it is. Second, can a vacant lot owned by that same nonprofit corporation and held for future use in close connection with the operation of the apartment complex be granted a similar exemption? We conclude that it can be. Therefore, we affirm the judgment of the trial court.
Amendment 373(k) provides in pertinent part that "property devoted exclusively to . . . charitable purposes" is exempt from ad valorem taxation. Section 40-9-1(1) states in pertinent part that "all property, real and personal, used exclusively for . . . purposes purely charitable" is exempt from ad valorem taxation. This case addresses the ad valorem taxation of two parcels of real property. The first parcel is used for operation of a "well-elderly" retirement home known as "Bell Oaks"; that home is owned and operated by Baptist Outreach Services Corporation ("BOSC"), which is a nonprofit corporation exempt from federal income taxation pursuant to I.R.C. § 501(c)(3). The second parcel of land is a vacant strip adjacent to Bell Oaks. The second parcel is owned and operated by Baptist Health Care Foundation ("BHCF"), which is also a nonprofit corporation exempt from income taxation pursuant to I.R.C. § 501(c)(3). The second parcel is being held for future charitable use in conjunction with Bell Oaks. Both BOSC and BHCF are now part of the Baptist Health System ("Baptist Health").
In 1998, BOSC and BHCF sued the State revenue commissioner and the Montgomery County revenue commissioner. The complaint alleged that the defendants were improperly assessing ad valorem taxes on the two parcels. This case was submitted to the trial court on the briefs, oral arguments, and one deposition. On May 4, 1999, the trial court entered an order in favor of BOSC and BHCF. The defendants appeal.
The dispositive issue is whether these two parcels are being used exclusively for charitable purposes. If they are, then there is no question that BOSC and BHCF are exempt from ad valorem taxation under the clear wording of Amendment 373(k) and § 40-9-1(1).
The defendants contend that neither the property occupied by Bell Oaks nor the second parcel is devoted exclusively to a charitable purpose. The defendants' position is basically that Bell Oaks does not qualify for the total tax exemptions set out in Amendment 373(k) and § 40-9-1(1) because Bell Oaks receives rental income beyond its operating cost and turns away the indigent and the sick elderly. The defendants argue that the vacant parcel does not qualify because, they say, it is not being used for a charitable purpose.
In Mingledorff v. Vaughan Regional Medical Center, Inc., 682 So.2d 415,418 (Ala. 1996), we wrote:
 "In order to qualify for the total ad valorem tax exemption provided by Amendment 373(k) and § 40-9-1(1), Vaughan and Baptist must use their property exclusively for charitable purposes or, as this Court stated in [Most Worshipful Grand Lodge of Free Accepted Masons v. Norred, 603 So.2d 996, at 1000 (Ala. 1992)], they must use it `solely, only, or wholly for a . . . charitable purpose.' In Henderson v. Troy Bank Trust Co., 250 Ala. 456, 466, 34 So.2d 835, 841 (1948), this Court, quoting Johnson v. Holifield, 79 Ala. 423, 425 (1885), discussed the nature of a `charity':
 "`"A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It *Page 416 
is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."'"
This definition is consistent with the definition of `charity' set out in Black's Law Dictionary (6th ed. 1990):
 "`A gift for, or institution engaged in, public benevolent purposes. A gift for benefit of indefinite number of persons under influence of religion or education, relief from disease, assisting people to establish themselves in life, or erecting or maintaining public works. . . . A "charity," in the absence of legislative definition, is attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources and without hope or expectation, if not with possible abnegation, of gain or profit by donor or by instrumentality of charity.'"
It is not disputed that Bell Oaks was built for a charitable purpose. Jody Pigg, chief financial officer for Baptist Health, in the only deposition submitted in this case, testified that BHCF "wanted to develop a housing complex for the retiring community as a gesture of community support." The net earnings of Bell Oaks do not inure to the benefit of any director, officer, or private individual, but are devoted to other charitable purposes. The slight profit of Bell Oaks would not pay for any kind of major construction, repair, or capital improvement that Bell Oaks may need in the future. The record indicates that Bell Oaks was built with a sizable amount of capital debt. In 1996, approximately $2.8 million of debt was paid by charitable contributions from other Baptist entities. Bell Oaks could not set its rates as low as it does if it were required to service its own debt. Additionally, Bell Oaks has not had a rate increase in the past six years. Pigg stated the purpose for keeping the rates unchanged:
 "[We are] not wanting to increase significantly [the rate] to a population whose income is fixed. In other words . . . we have . . . had the position that we would not increase [the rates] because their income is not going up. . . . [T]he most sensitive piece of information is knowing that the people that are housed there are fixed-income people and knowing that those typically change with cost-of-living adjustments through federal sources, their income, and that has been relatively small, according to published figures, that we do not feel like we have been able to increase it significantly because of their particular issues."
In Vaughan Regional Medical Center, supra, this Court defined "charitable" in its broadest sense and noted a "trend toward defining a `charity' broadly." 682 So.2d at 421. In regard to that trend, it quoted 71 Am. Jur. 2d State and Local Taxation, § 373 (1972):
 "`A general trend of authority in cases determining the charitable character of institutions for tax exemption veers away from the old concept that charity is confined to the "free" care of the indigent, and toward the idea of charity as comprehending all humanitarian activities even though recipients may be able to pay at least in part for the benefits. Thus, a charitable institution does not lose its character and consequent tax exemption merely because recipients of its benefits who are able to pay are required to do so, where funds derived in this manner are devoted to the charitable purposes of the institution. The exemption has been held to apply even if all or generally all the beneficiaries are required to pay, at least provided the charges are nominal or below the actual cost of the benefits conferred, but held not to apply, according to some cases, if they are remunerative in character, and, in some instances, if they are set at usual, commercial, or substantial rates. But even the realization of an operating income in excess of *Page 417 the cost of the services provided has been held not to destroy the tax exempt status where the excess does not inure to anyone's individual profit, but is devoted to the charitable purposes of the institution. And in fact it has been said that to hold that because a charitable institution's receipts for a given period exceed its expenditures, this nullifies the tax exemption, would be to penalize efficiency and to cause the institution's eligibility for exemption to vary from year to year.'"
(Emphasis added.)
This broad definition of "charitable" is instructive. Johnson, VaughanRegional Medical Center, and Black's Law Dictionary indicate that "assisting people to establish themselves in life" is a charitable purpose. This is the function Bell Oaks serves. It should be exempt.
Vacant property of a nonprofit corporation being held with a good-faith intent that it be used for charity has a charitable purpose. Its purpose is future charitable use. It is significant, we think, that BHCF has satisfied the I.R.S. that its charitable status entitles it to be exempt from federal income taxation. I.R.C. § 501(c)(3) states in pertinent part that the income-tax exemption is available to "[c]orporations . . . organized and operated exclusively for . . . charitable . . . purposes." Contrary to the defendants' urgings, we can discern no logical basis for imposing a more stringent requirement on nonprofit organizations seeking the ad valorem tax exemption under Amendment 373(k) and § 40-9-1(1). The second parcel should not be taxed.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Cook, Lyons, Johnstone, and England, JJ., concur.