PER CURIAM.
H.E. Monroe, Jr., as commissioner of the Department of Revenue of the State of Alabama, filed with this Court a document he styled as a “petition for extraordinary writ.” In it, he asks us to direct the Montgomery Circuit Court to vacate its order requiring the commissioner to place franchise taxes collected pursuant to Ala.Code 1975, § 40-14-41, from foreign corporations doing business in Alabama, into an interest-bearing escrow account pending resolution of a challenge to the constitutionality of the statute authorizing the imposition of those taxes. This Court has treated the commissioner’s petition as a timely appeal from an interlocutory order granting an injunction, see Rule 4(a)(1)(A), Ala.R.App.P. We reverse and remand.
This case is another, and presumably the last, installment in litigation challenging the constitutionality of Ala.Code 1975, § 40-14-41. That section provides in part: “Every corporation organized under the laws of any other state, ... and doing business in this state, except strictly benevolent ... corporations, shall pay annually to the state an annual franchise tax of three dollars ($3) on each one thousand dollars ($1,000) of the actual amount of its capital employed in this state.” The plaintiff in this litigation is a foreign corporation. It contends that § 40-14-41 imposes on foreign corporations doing business in Alabama a higher tax than is imposed on domestic corporations. Consequently, it contends, § 40-14-41 violates the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3,[1] in that it impermissibly burdens interstate commerce. It also contends that § 40-14-41 discriminates against it, in violation of the Equal Protection Clause of the Fourteenth Amendment.
These claims were first presented in White v. Reynolds Metals Co., 558 So.2d 367 (Ala.Civ.App.), rev’d, 558 So.2d 373 (Ala.1989), cert. denied sub nom. Reynolds Metals Co. v. Sizemore, 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990). That action was brought by Reynolds Metals Company, GMAC Leas *17 ing Corporation, General Motors Acceptance Corporation, and General Motors Corporation. 558 So.2d at 368. After a lengthy and thorough discussion, this Court held that § 40-14-41 did not violate the Equal Protection Clause or the Commerce Clause. Id. at 390.
While White was under appellate review, other actions challenging § 40-14-41 were initiated. One of those actions was brought by South Central Bell Telephone Company. That action was stayed pending the final disposition of White. Eventually, the stay was lifted and South Central Bell Telephone Company’s action was consolidated for trial with similar actions brought by its successors or affiliates, namely, BellSouth Telecommunications, Inc., BellSouth Corporation, Bell-South Services, Inc., BellSouth Financial Services Corporation, BellSouth Advertising & Publishing Corporation, BellSouth Resources, Inc., BellSouth Products, Inc., Alabama Cellular Services, Inc., Sunlink Corporation, and TeehSouth, Inc.; and with an action brought by CSX Transportation, Inc., and its predecessor companies. (All these parties are collectively referred to hereinafter as “South Central Bell”.) South Central Bell Telephone Co. v. State, 711 So.2d 1005, 1005 n. 1 (Ala.1998) (no opinion; Maddox, J., concurring specially). The cases were tried on December 14-15,1994.
On December 3, 1996, the trial court entered a judgment in favor of the commissioner, concluding that this Court’s holding in White barred South Central Bell’s claims on principles of res judicata. South Central Bell appealed. On March 20, 1998, this Court affirmed the judgment of the trial court, without an opinion, citing White as the basis for its affirmance.[2] South Central Bell Telephone, 711 So.2d at 1005.
On May 24, 1996, while South Central Bell Telephone was pending, Gladwin Corporation, a Delaware corporation, filed a complaint in the Montgomery Circuit Court on behalf of itself and all other corporations similarly situated. The complaint sought a judgment declaring § 40-14-41 “unconstitutional and void insofar as it discriminates against foreign corporations.” It also sought “a permanent injunction against the collection of [the tax authorized by § 40-14-41]; and an order directing a refund of previously collected taxes, with interest and attorney fees and costs.”
The commissioner moved the trial court to “stay the ... [Gladwin] action and ... place [it] on the Administrative docket pending the outcome of [South Central Bell Telephone ].” That motion was granted on July 1, 1996. The commissioner notes that approximately 50 other actions involving this issue were likewise stayed pending the resolution of South Central Bell Telephone. Brief of Appellant, at p. 1.
Subsequently, Gladwin moved the trial court to conditionally certify the action as a class action and to “remove the case from the administrative docket and restore it to its active docket.” On June 12, 1997, the trial court granted Gladwin’s motion for class certification. Gladwin also moved the trial court either (1) to prohibit the state “from collecting the foreign franchise tax imposed [by] § 40-14-41,” or (2) to require the state “to pay the disputed tax into an escrow account until a final decision by the Alabama Supreme Court ... on the issue of the constitutionality of [§ 40-14-41].”
On August 5, 1997, the trial court entered an order restoring the action to the active docket for purposes of discovery. It also ordered the state to “place any foreign franchise tax monies collected into an interest bearing escrow account until further order.” The court stated:
“[T]he court is of the opinion that the status quo should be preserved pending a decision by the Supreme Court of Alabama in the South Central Bell case. There ... exists a reasonable probability of ultimate success on the merits of the case and no adequate remedy of law exists for the recovery of the taxes involved. Furthermore, the plaintiff would suffer immediate *18 and irreparable injury if no remedy were provided. Finally, the court is of the opinion that the injunctive relief requested, placing the taxes collected into an escrow account, would preserve the status quo.”
On August 14,1997, the commissioner petitioned for an extraordinary writ requiring the trial court to vacate the injunction. On January 30, 1998, we stayed the preliminary injunction. We also informed the parties that the petition would be treated as a timely appeal from an “interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or modify an injunction.” Ala. R.App. P. 4(a)(1)(A).
On appeal, the commissioner contends that the conditions precedent to the grant of a preliminary injunction are lacking, and, consequently, that the trial court erred in ordering the taxes placed into an escrow account. For a trial court to grant a preliminary injunction, the party seeking the injunction must show:
“(1) that without the injunction the plaintiff would suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the defendant by the injunction would not unreasonably outweigh the benefit accruing to the plaintiff.”
Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994).
Gladwin argues that it has made such a showing. As to the first item, in particular, Gladwin contends:
“Plaintiff and all others similarly situated face an imminent risk of irreparable injury because the state has taken the position that even if the franchise tax is found to be unconstitutional, that ruling cannot be applied retroactively. Thus, it is the state’s position that taxes paid during the pendency of the litigation cannot be refunded even if the state ultimately loses. Plaintiff disagrees, and argues, infra Point III, that any ruling on the constitutionality of the franchise tax must be applied retroactively.”
Brief of Appellee, at pp. 14-15 (emphasis added).
In the section of its brief to this Court headed “Point III,” Gladwin argues that if the statute is determined to be unconstitutional, the state may be required to provide “ ‘meaningful backward-looking relief to rectify any unconstitutional deprivation,’ ” namely, “refunds.” Id. at pp. 19-20 (quoting McKesson v. Division of Alcoholic Beverages, 496 U.S. 18, 39, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990)). Additionally, it states:
“ ‘[N]o corrective action by the State could cure the invalidity of the tax during the contested tax period. The State would have no choice but to “undo” the unlawful deprivation by refunding the tax previously paid under duress, because allowing the State to “collect these unlawful taxes by coercive means and not incur any obligation to pay them back would be in contravention of the Fourteenth Amendment.” ’ ”
Brief of Appellee, at p. 20 (quoting McKesson, supra, at 39, 110 S.Ct. 2238) (emphasis added by Gladwin). As further support for this proposition, Gladwin cites other decisions from the United States Supreme Court, including Newsweek, Inc. v. Florida Department of Revenue, 522 U.S. 442, 118 S.Ct. 904, 139 L.Ed.2d 888 (1998); Reich v. Collins, 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994); and Harper v. Virginia Department of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).
Gladwin’s forceful arguments betray its contention that without the injunction it “face[s] an imminent risk of irreparable injury” if § 40-14-1 is ultimately held to be unconstitutional. In other words, Gladwin strenuously argues that it is entitled to the full range of retroactive relief, including refunds, if it prevails on the merits. Because it has thus failed to meet its burden of demonstrating to this Court that the elements necessary to support the injunction are satisfied, the order of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.
PETITION TREATED AS APPEAL; REVERSED AND REMANDED.
*19 HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
SEE, J., concurs specially.
ALMON, J., concurs in the result.
LYONS, J., recuses himself.

. The Commerce Clause provides: "The congress shall have power to ... regulate commerce ... among the several states_”

. In addition to White, the Court cited Ala. R.App. P. 53(a)(2)(F). Rule 53(a) authorizes an affirmance without an opinion where this Court "concludes that the judgment or order was entered without an error of law,” (a)(2)(F), and that "an opinion ... would serve no significant prec-edential purpose,” (a)(1).