[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 139 
This is a direct action against the State of Alabama seeking refunds of previously paid corporate franchise taxes. We dismiss the action for lack of subject-matter jurisdiction.
 I. Factual and Procedural Background
This case is another chapter in long-running litigation over corporate franchise taxes collected pursuant to Ala. Code 1975, §§ 40-14-40, and -41, repealed by Act No. 665, 1999 Ala. Acts 131, Second Special Session. For the history of this litigation, see South Central BellTelephone Co. v. Alabama, 526 U.S. 160 (1999) (holding Alabama's franchise-tax statutes unconstitutional); on remand, South Central BellTelephone Co. v. State, 789 So.2d 133 (Ala. 1999) ("First Interim Order"), and 789 So.2d 147 (Ala. 2000) ("Second Interim Order"); Ex parteMonroe, 723 So.2d 15 (Ala. 1998); White v. Reynolds Metals Co.,558 So.2d 373 (Ala. 1989) (upholding the franchise-tax statutes against a constitutional challenge), cert. denied sub nom., Reynolds Metals Co. v.Sizemore, 496 U.S. 912 (1990). The initial complaint in this action was filed as a class action on May 24, 1996, while South Central Bell was pending, by Gladwin Corporation ("Gladwin") "on behalf of itself and all other corporations similarly situated." Ex parte Monroe, 723 So.2d 15, 17
(Ala. 1998) (an appeal from an interlocutory order in the case now before us). Gladwin sought a refund initially in the circuit court; it invokednone of the administrative procedures for relief set forth in the Taxpayers' Bill of Rights and Uniform Revenue Procedures Act, Ala. Code 1975, § 40-2A-1 et seq. ("the TBOR"). This case was placed on the administrative docket in the Montgomery Circuit Court, pending resolution of the issues in South Central Bell.
On remand of South Central Bell from the United States Supreme Court, this Court ordered the parties in that case to marshal evidence and present arguments that would be useful to this Court in fashioning a remedy consistent with the United States "Constitution and the holdings of the United States Supreme Court." 789 So.2d at 151. Instead, however, the parties settled the dispute, and South Central Bell was dismissed. Subsequently, this case proceeded.
The complaint as last amended on November 1, 2000, added Arizona Chemical Company ("ACC") as a class representative. Before joining this action, ACC had petitioned the Department of Revenue ("the Department") for a refund of franchise taxes it had paid from 1995 to 1999. The Department failed to respond to the petition within six months, and it was deemed denied by operation of law. § 40-2A-7(c)(3). Subsequently, ACC appealed, pursuant to § 40-2A-7(c)(5), to the administrative law division of the Department. While that appeal was pending, however, ACC asserted its claims in the amended class-action complaint.
Gladwin and ACC (hereinafter collectively referred to as "the Taxpayers") seek to represent a class of foreign corporations that have paid, or that have been assessed, franchise taxes under the invalid tax scheme. They seek "refunds with interest of the sums that Alabama already has collected, pursuant to its foreign franchise tax . . . for tax years prior to 2000." On June 13, 2001, the trial judge certified, pursuant to Ala.R.Civ.P. 23(b)(3), an opt-out class consisting of approximately *Page 141 
18,000 class members and placing approximately $1 billion in controversy.
Cynthia Underwood, in her official capacity as Commissioner of the Department of Revenue ("the Commissioner"),[1] appeals from the class-certification order. On appeal, she contends that this action is due to be dismissed, on the ground that the Taxpayers have not invoked the trial court's jurisdiction. This is so, she argues, because the Taxpayers have not availed themselves of the refund procedures provided in the TBOR. She cites § 40-2A-7(c)(5), which states:
 "a. A taxpayer may appeal from the denial in whole or in part of a petition for refund by filing a notice of appeal with the administrative law division within two years from the date the petition is denied, and the appeal, if timely filed, shall proceed as hereinafter provided for appeals to the administrative law division.
 "b. In lieu of appealing to the administrative law division, the taxpayer may appeal from the denial of a petition for refund by filing a notice of appeal with the Circuit Court in Montgomery County . . . within two years from the date the petition is denied. . . .
 "c. If an appeal is not filed with the Administrative Law Division or the circuit court within two years of the date the petition is denied, then the appeal shall be dismissed for lack of jurisdiction."
(Emphasis added.) She also cites Ala. Code 1975, § 40-2A-9(g)(1), which similarly states:
 "Either the taxpayer or the department may appeal to circuit court from a final order issued by the administrative law judge by filing a notice of appeal with the Administrative Law Division and with the circuit court within 30 days from the date of entry of the final order. . . . The circuit court shall dismiss any appeal that is not timely filed with the Administrative Law Division and the circuit court as herein provided . . . ."
(Emphasis added.) It is undisputed that the Taxpayers are not proceeding under the TBOR, but, instead, are attempting to prosecute a direct action in the circuit court. Thus, the Commissioner contends, the trial court lacks subject-matter jurisdiction of the Taxpayers' claims.
The Taxpayers, however, define the issue, not in terms of subject-matter jurisdiction, but in terms of "exhaustion of remedies." In fact, they rely on certain exceptions to that doctrine as authority for bypassing the TBOR. The right to commence a direct action in the circuit court, they insist, turns "on what sort of challenge is being made to the tax." Taxpayers' Brief, at 26 (emphasis added). More specifically, they argue that a taxpayer seeking a refund from the State treasury "need not exhaust administrative remedies when challenging the overall validity or constitutionality of a tax." Id. We disagree with this contention.
To be sure, Alabama recognizes the doctrine of exhaustion of administrative remedies. City of Huntsville v. Smartt, 409 So.2d 1353,1357 (Ala. 1982). "This doctrine `requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted.'" Id. (quoting Fraternal Order of Police,Strawberry Lodge No. 40 v. Entrekin, 294 Ala. 201, 209, 314 So.2d 663,670 (1975)). Also, we recognize exceptions to the *Page 142 
doctrine, such as where "[q]uestions of law and of statutory and constitutional construction preponderate over questions of fact."Mingledorff v. Vaughan Regional Med. Ctr., Inc., 682 So.2d 415, 416
(Ala. 1996). In Alabama, however, the exhaustion-of-remedies doctrine "is a judicially imposed prudential limitation, not an issue ofsubject-matter jurisdiction." Budget Inn of Daphne, Inc. v. City ofDaphne, 789 So.2d 154, 157 (Ala. 2000) (emphasis added).
The Commissioner's position — indeed, the centerpiece of her subject-matter jurisdiction argument — is that a direct action in the circuit court seeking a tax refund from the State treasury is barred by the principle of sovereign immunity, as that principle is expressed in Ala. Const. 1901, § 14. Section 14 provides: "That the State of Alabama shall never be made a defendant in any court of law or equity."
The wall of immunity erected by § 14 is nearly impregnable. SandersLead Co. v. Levine, 370 F. Supp. 1115, 1117 (M.D.Ala. 1973); Taylor v.Troy State Univ., 437 So.2d 472, 474 (Ala. 1983); Hutchinson v. Board ofTrustees of Univ. of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284
(1971). This immunity may not be waived. Larkins v. Department of MentalHealth Mental Retardation, 806 So.2d 358, 363 (Ala. 2001) ("The State is immune from suit, and its immunity cannot be waived by the Legislature or by any other State authority"); Druid City Hosp. Bd. v. Epperson,378 So.2d 696 (Ala. 1979) (same); Opinion of the Justices No. 69,247 Ala. 195, 23 So.2d 505 (1945) (same); see also Dunn Constr. Co. v.State Bd. of Adjustment, 234 Ala. 372, 175 So. 383 (1937). "This means not only that the state itself may not be sued, but that this cannot beindirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly toaffect the financial status of the state treasury." State Docks Comm'nv. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932) (emphasis added); see also Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963).
This Court has recognized several species of action that are not "against the State" for § 14 purposes. They include:
 "(1) Actions brought to compel State officials to perform their legal duties. Department of Industrial Relations v. West Boylston Manufacturing Co., 253 Ala. 67, 42 So.2d 787 [(1949)]; Metcalf v. Department of Industrial Relations, 245 Ala. 299, 16 So.2d 787
[(1944)]. (2) Actions brought to enjoin State officials from enforcing an unconstitutional law. Glass v. Prudential Insurance Co. of America, 246 Ala. 579, 22 So.2d 13 [(1945)]. . . . (3) Actions to compel State officials to perform ministerial acts. Curry v. Woodstock Slag Corp., 242 Ala. 379, 6 So.2d 479 [(1943)], and cases there cited. (4) Actions brought under the Declaratory Judgments Act, [Ala. Code 1975, § 6-6-220 et seq.], seeking construction of a statute and how it should be applied in a given situation."
Aland v. Graham, 287 Ala. 226, 229-30, 250 So.2d 677, 679 (1971). "In determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought." Ex parte Carter, 395 So.2d 65, 67-68 (Ala. 1980) (emphasis added).
Thus, if an action seeking tax refunds is an action against the State within the meaning of § 14, then neither the doctrine of exhaustion of remedies nor the exceptions thereto apply. Such a case presents a question of subject-matter jurisdiction, which cannot be waived or *Page 143 
conferred by consent. Sustainable Forests, L.L.C. v. Alabama Power Co.,805 So.2d 681 (Ala. 2001); Stringfellow v. State Farm Life Ins. Co.,743 So.2d 439 (Ala. 1999); Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634
(Ala. 1998).
A direct action for a refund of taxes paid to the State is essentially "a common law action of indebitatus assumpsit against the State." J.R.Raible Co. v. State Tax Comm'n, 239 Ala. 41, 44, 194 So. 560, 561
(1939). Clearly, a judgment in favor of the class, which seeks tax refunds totaling approximately $1 billion, would "affect the financialstatus of the state treasury." State Docks Comm'n v. Barnes,225 Ala. at 405, 143 So. at 582 (emphasis added). See also Williams v. Hank'sAmbulance Serv., Inc., 699 So.2d 1230, 1232 (Ala. 1997) (a judgment in favor of medical providers requiring reimbursement from the State for services, which payment had been withheld under the State's erroneous interpretation of federal statutes, would "`directly affect a . . . property right of the State,'" and, therefore, was barred by § 14); Exparte Sizemore, 611 So.2d 1069, 1070 (Ala. 1993) (an action seeking a refund of income taxes paid on military retirement benefits was an unconstitutional "action against the state, seeking as a remedy funds from the state treasury") (Houston, J., dissenting from quashing the writ of certiorari). Consequently, the question is one of subject-matter jurisdiction, not exhaustion of remedies.
 II. The Taxpayers' Bait-and-Switch Argument
The Taxpayers argue that "[t]he United States Constitution precludes Alabama from withdrawing a remedy that the average taxpayer reasonably believed was available." Taxpayers' Brief, at 33. They insist that taxpayers interpreting "45 years" of Alabama law would not have concluded that a direct action seeking franchise-tax refunds would be barred by § 14. More specifically, they state: "Whether or not Alabama is required to offer taxpayers a direct action for refunds of unconstitutional taxes, the State cannot hold out the existence of such a remedy — as it has done these past 45 years — only to withdraw that remedy after the fact." Taxpayers' Brief, at 33. For this proposition, they cite Reich v. Collins, 513 U.S. 106 (1994), which some courts have dubbed "a `bait-and-switch' case." Stone Container Corp. v.United States, 229 F.3d 1345, 1351 (Fed. Cir. 2000), cert. denied subnom., Smurfit-Stone Container Corp. v. United States, 532 U.S. 971
(2001).
Reich involved an action for a tax refund, pursuant to Ga. Code Ann. § 48-2-35(a). Section 48-2-35(a) provided: "`A taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him under the laws of this state, whether paid voluntarily or involuntarily. . . .'"513 U.S. at 109. After the United States Supreme Court decided Davis v.Michigan Department of Treasury, 489 U.S. 803 (1989), in which the Court invalidated state statutory schemes that "exempted from state personal income tax retirement benefits paid by the State, but not retirement benefits paid by the Federal Government (or any other employer),"513 U.S. at 108, a Georgia taxpayer sought, pursuant to § 48-2-35(a), a refund of taxes he had paid under Georgia's version of the unconstitutional scheme. The Georgia Supreme Court denied the refund, holding that Georgia law provided "ample predeprivation remedies," Reichv. Collins, 263 Ga. 602, 604, 437 S.E.2d 320, 322 (1993) (emphasis *Page 144 
added), rev'd, 513 U.S. 106 (1994), that is, opportunities to challenge tax assessments while withholding payment. Because the taxpayer had not availed himself of those predeprivation provisions, that court concluded, he could, consistent with due process, be denied the right to proceed under § 48-2-35(a).
The United States Supreme Court disagreed, and it reversed the judgment of the Georgia Supreme Court. In doing so, the Court explained:
 "The Georgia Supreme Court is no doubt right that, under McKesson [Corp. v. Division of Alcoholic Beverages Tobacco, 496 U.S. 18 (1990)], Georgia has the flexibility to maintain an exclusively predeprivation remedial scheme, so long as that scheme is `clear and certain.' Due process, we should add, also allows the State to maintain an exclusively postdeprivation regime, . . . or a hybrid regime. A State is free as well to reconfigure its remedial scheme over time, to fit its changing needs. Such choices are generally a matter only of state law.
 "But what a State may not do, and what Georgia did here, is to reconfigure its scheme, unfairly, in midcourse — to `bait and switch,' as some have described it. Specifically, in the mid-1980's, Georgia held out what plainly appeared to be a `clear and certain' postdeprivation remedy, in the form of its tax refund statute [§ 48-2-35(a)], and then declared, only after Reich and others had paid the disputed taxes, that no such remedy exists. In this regard, the Georgia Supreme Court's reliance on Georgia's predeprivation procedures was entirely beside the point (and thus error), because even assuming the constitutional adequacy of these procedures — an issue on which we express no view — no reasonable taxpayer would have thought that they represented, in light of the apparent applicability of the refund statute, the exclusive
remedy for unlawful taxes. . . .
 "Nor can there be any question that, during the 1980's, prior to [this litigation], Georgia did appear to hold out a `clear and certain' postdeprivation remedy. To recall, the Georgia refund statute says that the State' shall `refund' any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from [a taxpayer] under the laws of this state, whether paid voluntarily or involuntarily. . . .'"
513 U.S. at 110-11.
The Court also noted that the construction placed on the statute by the Georgia Supreme Court before the Reich litigation was "entirely consistent with that language's apparent breadth." 513 U.S. at 112. In short, it concluded that the taxpayer was entitled to proceed under § 48-2-35(a), notwithstanding his failure to invoke any of the available predeprivation procedures.
The Taxpayers contend that an opinion in this case holding that the TBOR is jurisdictional, thus providing the exclusive means to a franchise-tax refund, would represent an unconstitutional "bait-and-switch." The ultimate question, therefore, is whether the reasonable taxpayer could have construed Alabama law as providing a right to prosecute an original action in the circuit court for a refund of franchise taxes assessed and paid under a statutory scheme ultimately held to be unconstitutional. Otherwise stated in the words of Reich, the question is whether the "reasonable taxpayer would have thought that [the TBOR] represented . . . the exclusive remedy for unlawful [franchise] taxes." *Page 145 513 U.S. at 111. We answer the question in the affirmative.
"`It is well settled that the right to reclaim money voluntarily paid to the state or the counties thereof, as taxes, is a creature of legislative grace. . . .'" Board of Revenue Road Comm'rs of MobileCounty v. Jones, 236 Ala. 244, 245, 181 So. 908, 909 (1938) (quoting Leev. Cunningham, 234 Ala. 639, 642, 176 So. 477, 480 (1937)). "In the absence of statute a refund of monies paid into the state treasury under color of the revenue laws of the state were not subject to refund." Curryv. Johnston, 242 Ala. 319, 320, 6 So.2d 397, 397 (1942).
For taxpayers seeking refunds of taxes paid to the State, the Legislature, over the years, has provided a number of procedural remedies. One such procedural remedy allowed the taxpayer to pay the tax "under protest" and then to commence an action to litigate the merits of the claim. A second procedure consisted of an appeal from a final assessment. Finally, where the tax was paid "through mistake or error," a taxpayer was entitled to a writ of mandamus to compel a refund. Because this Court has never addressed the TBOR in the context of § 14, we shall briefly discuss each of the procedures provided by its statutory predecessors, as those procedures would have been understood by the "reasonable taxpayer."
 A. Payment Under Protest
In 1935, the Legislature passed Act No. 194, §§ 379-80 1935 Ala. Acts 256, codified at Ala. Code 1940, Tit. 51, §§ 890-91; Ala. Code 1958 (Recompiled); Ala. Code 1975, §§ 40-1-11 to -12; repealed, Act No. 92-186, 1992 Ala. Acts 349, codified at Ala. Code 1975, § 40-2A-1et seq.[2] Three years later, on August 2, 1938, J.R. Raible Company ("Raible") commenced an action against the "State Tax Commission of Alabama." J.R. Raible Co. v. State Tax Comm'n, 29 Ala. App. 184, 185,194 So. 556, 557 (Ct.App.), rev'd, 239 Ala. 41, 194 So. 560 (1939). The two-count complaint sought refunds for license and sales taxes paid "under protest." 29 Ala. App. at 186, 194 So. at 557. The action was commenced pursuant to §§ 379-80 of Act No. 194, which provided:
 "Section 379. Whenever any taxpayer claims that any tax, except ad valorem taxes, herein levied, as fixed by the collecting officer is excessive or is invalid either in whole or in part, the taxpayer shall pay such tax under protest, and the officer receiving the same shall note on the receipt that such tax was paid under protest. Within sixty days after such payment under protest, the taxpayer shall commence suit against the officer for the recovery of such amount as is claimed to be excessive or invalid, and unless such suit is commenced within such period of sixty days from such payment, such payment shall be deemed voluntary. Upon hearing and judgment the Court shall determine what amount so paid is excessive or illegal, and shall order the same to be repaid by the State or its agencies receiving the same in the same manner as is provided in cases of *Page 146 
 appeals from the State Tax Commission, and such amount shall be refunded in the same manner."
 "Section 380. Whenever any money for taxes paid to any officer authorized to receive or collect same is paid under protest, such officer shall distribute to the various governmental agencies the proportion due such governmental agencies in the manner and at the times provided in this Act, and at the time of such distribution, shall note the fact that such payment was made under protest, and the Treasurer or custodian of funds of such governmental agency, shall in giving his receipt therefor, note that such tax was paid under protest. Any Tax Collector or other officer authorized to receive and collect taxes noting such fact, shall not be personally liable for such payments should such taxes ultimately be held illegal or excessive."
(Emphasis added.)
After a nonjury trial, the court entered a judgment for the commission, and Raible appealed. The Court of Appeals reversed that judgment, and the commission sought certiorari review in this Court. On certiorari review, this Court reversed the judgment of the Court of Appeals. In doing so, it stated: "To all intents and purposes, this is a common law action of indebitatus assumpsit against the State, and the circuit court was without jurisdiction to entertain it." 239 Ala. at 44,194 So. at 561. It further held that §§ 379 and 380, to the extent they purported to authorize an action in the circuit court for a tax refund, "patently violat[ed] § 14 of the Constitution, and any such judgment so rendered would be void." 239 Ala. at 44, 194 So. at 562
(opinion on rehearing).
Four years after Raible was decided, the Legislature passed Act No. 402, 1943 Ala. Acts 369, which amended Tit. 51, §§ 379 and 380. Act No. 402 provided:
 "Section 890. REMEDIES OF TAXPAYER. — Whenever any taxpayer claims that any tax, except ad valorem taxes, levied under the provisions of this act, as fixed by the officer authorized to collect same is excessive or is invalid, either in whole or in part, the taxpayer shall pay such tax under protest, and the officer receiving the same shall note on the receipt that such tax was paid under protest. The taxpayer shall commence suit against the officer for the recovery of such excessive or invalid tax, as the case may be, within sixty days after the payment thereof under protest, and the unless such suit is commenced within that period of time, for the recovery of the amount of taxes claimed to be excessive or invalid, the taxpayer shall be deemed to have waived the payment of such taxes under protest and to have thereby become a voluntary taxpayer. If suit is filed for the recovery of any taxes paid under protest, within the specified period of time, and it is determined upon a hearing of the case that any part of the taxes so paid is excessive or illegal, the same shall be refunded as provided in the succeeding section. Section 891. DISPOSITION OF TAXES PAID UNDER PROTEST — Whenever any money is paid to any officer authorized to receive or collect same, as taxes paid under protest, such officer shall certify such sum of money to the State Treasury, with notice to the Treasurer that said sum of money was paid under protest by the identified taxpayer and it shall be the duty of the Treasurer to hold such sum of money in an identified suspense account until it is judicially determined whether the taxes were legally levied and collected, or the taxpayer abandons the recovery of the *Page 147 
 money by failure to bring suit within the period of sixty days after the payment thereof. The Treasurer shall give notice to the Comptroller that such funds are set up in a suspense account and are therefore not available for allotment, allocation, or disbursement until the validity of the assessment and collection is determined by the Court. If it is determined by the Court, on suit brought by the taxpayer, that any portion of the taxes paid under protest was excessive or illegally assessed and collected, the Comptroller shall issue his warrant upon the Treasurer for a refund of such sum as may have been determined by the Court to be excessive or invalid, and the remainder of such fund, if any, shall be allocated and disbursed as authorized by law."
(Emphasis added.) Thus, Act No. 402 amended the former law by requiring the establishment of an escrow account, in which the disputed taxes were to be held pending a determination of their proper disposition.
The constitutionality of the amended sections was challenged — and upheld — only two years later. Glass v. Prudential Ins. Co. ofAmerica, 246 Ala. 579, 22 So.2d 13 (1945) (superseded by statute on other grounds as recognized by Mooney v. Weaver, 262 Ala. 392, 79 So.2d 3
(1955)). Glass involved a "bill in equity" filed by Prudential Insurance Company ("Prudential"), a foreign corporation, "against Brooks Glass, superintendent of Insurance of the State of Alabama" ("the superintendent"). 246 Ala. at 580, 22 So.2d at 14. The complaint sought a judgment declaring that "a privilege or license tax" imposed upon it violated the Commerce Clause, and enjoining the superintendent from cancelling Prudential's business license for nonpayment of the tax.246 Ala. at 581-82, 22 So.2d at 14. The trial court issued a temporary injunction, and the superintendent appealed. 246 Ala. at 582,22 So.2d at 14.
The issue was whether Prudential had an adequate remedy at law. The resolution of that issue turned on whether the 1943 amendments had cured the constitutional deficiency found to exist in Raible. This Court held that they had. Accompanying the holding was an extended discussion of the effect of the amendments on the Raible holding:
 "The Legislature attempted in what is now §§ 890 and 891, Title 51, Code 1940, to provide a remedy for a refund of the taxes so paid, if found to be illegally exacted of the taxpayer. This court in considering these provisions which were formerly §§ 379 and 380, General Acts 1935, p. 568, concluded and so held that the plan therein outlined contravened Art. 1, § 14, Constitution of 1901, to the effect that the State of Alabama should never be made a defendant in any court of law or equity. Raible Co. v. State Tax Commission, 239 Ala. 41, 194 So. 560. . . . In discussing the invalidity of the refund statute as found in §§ 890 and 891, supra, this court laid stress upon the fact that the taxes paid under protest were to be distributed to the various governmental agencies and that upon a judgment being rendered as to the illegality of the taxes, the same were to be repaid by the State or the agencies receiving the same. In an effort to remedy the difficulty as found by the court of the refund statute of 1935, the Legislature amended §§ 890 and 891, supra, by an act approved July 10, 1943, General Acts, 1943, p. 369, which amendatory statutes now appear in the 1943 Cumulative Pocket Part, Code 1940, as §§ 890 and 891. If these amended statutes are held to be valid, we are of the opinion that they present a plain and adequate remedy at law. They are designed to *Page 148 
 cover license taxes of this nature. The amended § 890 gives the taxpayer who claims that the tax is either excessive or invalid in whole or in part, the right to pay such tax under protest, with the duty of the official receiving the same to note on the receipt that it was so paid under protest. Within sixty days after the protest payment, the taxpayer must commence suit against the officer for the recovery of such excessive or invalid tax, as the case may be, and unless the suit is commenced within that period of time, the taxpayer should be deemed to have waived the payment under protest and to thereby become a voluntary taxpayer. If suit is filed for the recovery of any tax paid under protest within the prescribed time and it is determined that the tax so paid was excessive or illegal, it should be refunded as provided in amended § 891. This amended section requires that the officer receiving the money which is paid under protest shall certify such sum of money to the State Treasurer with notice to the Treasurer it was paid under protest by the identified taxpayer and the Treasurer is required to hold such sum of money in an identified suspense account until it is judicially determined whether the tax was legally collected or the taxpayer abandons recovery of the money by failure to bring suit within the period of sixty days after payment thereof. The Treasurer is required to give notice to the Comptroller that such sums were set up in a suspense account and are, therefore, not available for allotment, allocation or disbursement until the validity of the tax is determined by the court. If in the suit brought by the taxpayer it is determined that any portion of the tax paid under protest was excessive or illegally assessed or collected, the Comptroller shall issue his warrant upon the Treasurer for a refund of such sum.
". . . .
 "The question of difficulty, however, arises out of the contention that the amended statutes (§§ 890 and 891) are still invalid as violative of Art. [I], § 14, of the Constitution, prohibiting a suit against the State. . . . Amended §§ 890 and 891, the substance of which has hereinbefore been stated, constitute a remedy in the nature of a declaratory judgment. The money paid under protest is not to be mingled with the general funds of the state. It is not to be allocated or disbursed. It must be identified and held in the nature of a trust fund, awaiting the determination of the court as to the legality of the tax. . . . In Curry v. Woodstock Slag Corporation, 242 Ala. 379, 6 So.2d 479, 480 [(1942)], this court entertained a declaratory judgment suit against the Commissioner of Revenue for the State of Alabama, as the chief executive officer of the State Department of Revenue. The purpose of the bill was to have determined in advance the construction and validity of the statutes applicable to the sales tax. It was clear that in that case the complainant had no plain and adequate remedy at law and the court there observed: `It is not at all the necessary consequence of a suit to settle an actual controversy with such an officer before the deed is done that it be in essence one against the State. An officer is often confronted with the problem of what the law means which requires certain acts on his part and whether it is valid. . . . When such a controversy arises between him and an individual the Declaratory Judgments Act furnishes the remedy for or against him. When it is only sought to construe the law and direct the parties, whether individuals or State officers, what it requires of them under a given state of facts, to that extent it does *Page 149 
 not violate section 14, Constitution.' It is difficult to distinguish the holding in the Curry case in principle from that here involved in considering amended §§ 890 and 891. . . . If the tax is determined to be invalid, complainant would have been entitled to his refund. There is no judgment rendered against the State or against the officer collecting the money. It is in substance and effect the same as a declaratory judgment, which was declared available to the taxpayer in the Curry case. The one is in advance while the other is after the tax is due. The matters looking to a refund of the money call only for performance of ministerial duties and it will be assumed, of course, that the officer will perform his duty, but if he fails to do so, a writ of mandamus would be available.
". . . .
 ". . . [W]e are impelled to the conclusion that a provision in a refund statute requiring a fund held separate and apart, not to be allocated or distributed pending the question of the determination of the legality of the tax, is a matter of some materiality."
246 Ala. at 582-86, 22 So.2d at 15-18 (emphasis added).
The holdings and rationales of Raible and Glass material to this case may be summarized as follows: First, § 14 barred a direct action against the State for a tax refund. Second, an action to determine the disposition of funds held in escrow was in the nature of a declaratory judgment, and, therefore, was not a direct action against the State. Compliance with the statutory procedure for obtaining a refund of payments made pursuant to an illegal tax was, therefore, necessary and jurisdictional.
Raible has never been overruled or limited. In fact, it was cited by this Court twice last year. Larkins v. Department of Mental Health Mental Retardation, 806 So.2d 358, 364 (Ala. 2001); Alabama State DocksTerminal Ry. v. Lyles, 797 So.2d 432, 435 (Ala. 2001).
 B. Appeal From a Final Assessment
Act No. 194 also provided for a refund in the event of a successful "appeal from any final assessment made by the [department of revenue] under any assessment required by law to be made by the [department of revenue]." Act No. 194, § 103, 1935 Ala. Acts 256, codified as amended at Ala. Code 1940, Tit. 51, § 140; Ala. Code 1975, §40-2-22; repealed, Act No. 92-186, 1992 Ala. Acts 349, codified at Ala. Code 1975, § 40-2A-1 et seq. Section 40-2-22 provided, in pertinent part:
 "If any taxpayer against whom an assessment is made by the department of revenue under any assessment required by law to be made by the department of revenue is dissatisfied with the final assessment as fixed by the said department of revenue, he may appeal from said final assessment to the circuit court of Montgomery county . . . by filing notice of appeal with the secretary of the department of revenue and with the clerk or register of the circuit court of the county to which the appeal shall be taken within 30 days from the date of said final assessment made and entered on the minutes of the department as required by law and, in addition thereto, by giving bond conditioned to pay all costs to be filed with and approved by the clerk or register of the court to which the appeal shall be taken. The taxpayer shall pay the assessment so made before the same shall become delinquent; and, if such taxes are not paid before the same becomes delinquent, the court shall upon motion ex mero motu dismiss such appeal, unless at the time of taking the appeal the taxpayer has *Page 150 
 executed a supersedeas bond with sufficient sureties to be approved by the clerk or register of the court to which the appeal shall be taken in double the amount of the taxes payable to the state of Alabama, conditioned to pay all taxes, interest and costs due the state, county or any agency or subdivision thereof. . . . If upon such appeal the assessment made by the department of revenue is reduced, the court, upon proof of payment of said tax, shall ascertain and recite such fact in the judgment and shall ascertain and determine by its judgment, the amount of tax which was invalid or which was excessive . . . as to the amount paid to the state . . .; and, upon presentation of a certified copy of the judgment to the comptroller, it shall be the duty of the comptroller to draw his warrant on the treasurer in favor of such taxpayer for such an amount as the judgment of the court shall ascertain and declare has been erroneously paid to the state, together with interest from date of payment, and such warrant of the comptroller shall be paid out of any funds in the treasury as a current obligation of the year in which said refund is ordered."
(Emphasis added.)
"The right of appeal [was] clearly statutory and [could only] be exercised in the mode and within the prescribed time." Sparks v. Brock Blevins, Inc., 274 Ala. 147, 149, 145 So.2d 844, 846 (1962). "[A] final assessment of the Department of Revenue unappealed from [was] as conclusive as a judgment of a circuit court of Alabama, and [could] be impeached only by a direct proceeding not being subject to collateral attack." 274 Ala. at 149, 145 So.2d at 846. "Section 40-2-22 [was] jurisdictional; a failure to comply with its requirements [prevented] the circuit court from having jurisdiction to entertain the appeal." StateDep't of Revenue v. Estate of Hill, 505 So.2d 1240, 1240 (Ala.Civ.App. 1987); see also Dowda v. State, 274 Ala. 124, 145 So.2d 830 (1962). This was true even where the taxpayer challenged the constitutionality of the tax. Radue v. Bradshaw, 289 Ala. 481, 484, 268 So.2d 760, 762 (1972);Moore v. State Dep't of Revenue, 447 So.2d 744 (Ala.Civ.App. 1983). Neither § 40-2-22 nor the caselaw construing it contemplated a direct action against the State for a refund.
 C. Mandamus Relief from Tax Paid Through Mistake
Additionally, in two former Code sections the Legislature provided an avenue of relief where the taxpayer had not received a final assessment. See Ala. Code 1975, § 40-1-34, repealed and superseded, Act No. 92-186, 1992 Ala. Acts 349, codified at Ala. Code 1975, § 40-2A-1 etseq.; and Ala. Code 1975, § 40-18-43, repealed and superseded, Act. No. 92-186, 1992 Ala. Acts 349, codified at Ala. Code 1975, 40-2A-1 etseq. Section 40-1-34 provided:
 "Where any taxpayer in the payment of taxes or licenses which are paid directly to the department of revenue, by a mistake of fact or law has paid an amount in excess of the amount due or has made an erroneous payment, the comptroller is authorized to draw his warrant on the treasurer in favor of such taxpayer, and the treasurer is authorized to pay such warrant for the amount of such overpayment or erroneous payment.
 "Before any refund under this section can be made, the taxpayer, his heirs, successors or assigns shall file in duplicate a petition directed to the department of revenue, setting up the fact relied on to procure the refunding of the money erroneously paid. Such application must be made within three years from the date of such payment. *Page 151 
 "The department of revenue shall examine said petition and the records of the department of revenue, and if the facts set forth in the petition are such as to entitle the petitioner to the refunding of the money as prayed for and the department of revenue, upon the evidence adduced, is satisfied that the petitioner is entitled to the refund as prayed for, he shall so certify to the comptroller stating the amount to be refunded by the state, the particular fund on which such warrant shall be drawn and forward to the comptroller a copy of the petition with the certificate attached, and if the comptroller shall be satisfied that the petition is in form required by law, he shall draw his warrant on the treasurer as hereinbefore provided for the amount certified to him by the department of revenue."
(Emphasis added.)
Section 40-18-43, which provided for a refund of income tax paid "through mistake or error," defined the duties of the Department and the comptroller in a manner and with specificity similar to the description in § 40-1-34. Section 40-18-43 also specifically provided:
 "In the event the department of revenue fails or refuses to certify to the comptroller the amount of tax due to be refunded, or if it certifies a lesser amount than the taxpayer deems he is entitled to have refunded, the taxpayer may institute a proceeding in the circuit court of Montgomery county in the nature of a mandamus proceeding to require the department of revenue to certify, to the comptroller, the amount due to be refunded to such taxpayer."
(Emphasis added.)
The duties imposed on the Department, the comptroller, and the treasurer by §§ 40-1-34 and 40-18-43 were ministerial in nature. SeeSparks v. Louisville Nashville R.R., 277 Ala. 25, 28, 166 So.2d 865,868 (1964). However, the right of taxpayers to invoke those statutes depended on the filing of refund petitions within three years of the payment of the challenged taxes. Southern Natural Gas Co. v. State,261 Ala. 222, 228, 73 So.2d 731, 736-37 (1953); see also Curry v.Johnston, 242 Ala. 319, 6 So.2d 397 (1942). Thus, for relief by a writ of mandamus, compliance with these sections was mandatory.
In short, nothing in the refund statutes discussed above, or in this Court's caselaw construing those statutes, suggests to the reasonable taxpayer that anything less than strict statutory compliance is sufficient to support a right to a tax refund from the State. This refund scheme was held to provide taxpayers a "plain, speedy and efficient remedy," within the context of the Tax Injunction Act,28 U.S.C.A. § 1341. Melof v. Hunt, 718 F. Supp. 877 (M.D.Ala. 1989).
In apparent reliance on the rationale of Sparks, the Taxpayers contend that this action merely seeks the performance of a ministerial act, a species of relief not barred by § 14. See Aland, supra. A "duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode and occasion of its performance, with such certainty thatnothing remains for judgment or discretion." Grider v. Tally, 77 Ala. 422,425 (1884) (emphasis added). "Official action, the result of performing a certain and specific duty arising from fixed and designated facts, is a ministerial act." Id.
During oral argument, counsel for the Taxpayers stated:
 "If it is a ministerial act for the Commissioner of Revenue to calculate the refund and issue the check, under the Taxpayer Bill of Rights and thus you are outside the prohibition of sovereign immunity, *Page 152 
 certainly, the same analysis has to hold true in the context of a direct action for a refund, because it is the same act. It is either a ministerial act and it is [permitted by § 14] or it is not."
At first glance, this argument seems plausible. Closer scrutiny, however, reveals its inherent weakness, namely, the Taxpayers' determination to ignore the TBOR and proceed outside the statutoryscheme. To be sure, refunding taxes paid through a mistake or error is — in some contexts — a ministerial act, but it is so onlybecause the statutes make it so. It is ministerial because of the specificity with which the Legislature defined the duties of the taxing officials.
The Taxpayers cannot have it both ways. They cannot bring themselves within the statutory framework for one purpose and exclude themselves for other purposes. If they would reap the benefits of the TBOR, they must likewise bear its burdens. Thus, the Taxpayers' reliance on the ministerial-act exception to sovereign immunity is misplaced.
The cases the Taxpayers cite are not contrary to these principles. Specifically, they cite Mingledorff v. Vaughan Regional Medical Center,Inc., 682 So.2d 415 (Ala. 1996); White v. Sims, 470 So.2d 1191 (Ala. 1985); Eagerton v. Williams, 433 So.2d 436 (Ala. 1983); and Thorn v.Jefferson County, 375 So.2d 780 (Ala. 1979). Those cases are distinguishable, because they all involved disputes with counties over advalorem taxes. However, counties do not enjoy immunity under § 14. Exparte Sizemore, 611 So.2d 1069, 1070 (Ala. 1993) (Houston, J., dissenting from quashing writ of certiorari to the Court of Civil Appeals).
They also cite Graves v. McDonough, 264 Ala. 407, 88 So.2d 371 (1956).Graves, however, was a declaratory-judgment action arising out of a taxpayer's claim for a refund "of taxes paid . . . on an erroneous escape assessment made by the tax assessor on certain improvements to" real estate owned by the taxpayer. 264 Ala. at 408, 88 So.2d at 372. Moreover, the Court particularly noted: "[The attorney general] is notinsisting that this is a suit against the state in violation of section 14 of the Constitution." 264 Ala. at 409, 88 So.2d at 373 (emphasis added).
The Taxpayers also rely on two recent opinions of the Court of Civil Appeals. Monroe v. Valhalla Cemetery Co., 749 So.2d 470 (Ala.Civ.App. 1999); cert. denied, 529 U.S. 1022 (2000); and Sizemore v. Rinehart,611 So.2d 1064 (Ala.Civ.App. 1992), writ quashed, 611 So.2d 1069 (Ala. 1993). Monroe and Rinehart were direct class actions seeking refunds from the State.
In Monroe, the Court of Civil Appeals reached the merits of a challenge to the constitutionality of Act No. 97-301, 1997 Ala. Acts 522, which retroactively barred taxpayers' rights to refunds of use taxes "paid on goods purchased from out-of-state vendors and delivered into Alabama," 749 So.2d at 473, over the Commissioner's objection that that court lacked jurisdiction because the taxpayer had failed to comply with the Act. The court stated:
 "There are exceptions to the requirement that a taxpayer exhaust his administrative remedies. Where `[q]uestions of law and of statutory and constitutional construction preponderate over questions of fact,' a taxpayer is not required to exhaust its administrative *Page 153 
 remedies. Mingledorff v. Vaughan Regional Medical Center, Inc., 682 So.2d 415, 416 (Ala. 1996). Because Valhalla challenged the legal validity and the constitutionality of the use tax and Act No. 97-301, it was not required to exhaust its administrative remedies before resorting to the courts. The trial court had subject-matter jurisdiction of this action."
749 So.2d at 473 (emphasis added). The Commissioner did not challenge that holding, because the court held in favor of the Department on the merits. Nevertheless, she contends that the jurisdictional issue inMonroe was wrongly decided.
The plaintiff class in Rinehart was comprised of "all former members of the United States Armed Forces or their survivors, who were subject to payment of Alabama state income tax on their military retirement benefits and survivor benefits, or who had previously paid [such tax]." 611 So.2d at 1065. The action challenged the constitutionality of State statutes taxing the benefits received by the class differently than "retirement benefits" received by individuals "due to their state employment." Id.
The trial court held that the statutory scheme was "void and illegal as a violation of the constitutional doctrine of intergovernmental tax immunity." 611 So.2d at 1066. It ordered refunds "of all [such] taxes paid within three years prior to the date that the class filed its complaint." Id. The Court of Civil Appeals affirmed.
This Court initially granted the Commissioner's petition for certiorari review. Subsequently, however, over the strenuous dissent of Justice Houston, the Court quashed the writ as improvidently granted. Ex parteSizemore, 611 So.2d at 1070 (Houston, J., dissenting). Justice Houston reasoned that an action seeking a refund of income taxes paid on retirement benefits was an impermissible "action against the state, seeking as a remedy funds from the state treasury." Id. at 1070.
It is a familiar principle of law that "[a] denial of certiorari should never be considered as an expression by the reviewing court on the merits of the controversy." Ex parte Jefferson County Dep't of Human Res.,555 So.2d 1077, 1077 (Ala. 1990); Ex parte Buse, 549 So.2d 1344, 1344
(Ala. 1989); Ex parte Ford, 514 So.2d 1060, 1060 (Ala. 1987); Ex parteGlasco, 513 So.2d 61, 61 (Ala. 1987); Ex parte McDaniel, 418 So.2d 934,935 (Ala. 1982); Causey v. State, 374 So.2d 413, 414 (Ala. 1979). See also Hamilton Brown Shoe Co. v. Wolf Bros., 240 U.S. 251 (1916). Litigants who rely on opinions of intermediate appellate courts that conflict with opinions of the jurisdiction's highest court do so at their own risk. Cf. Brinkerhoff-Faris Trust Sav. Co. v. Hill, 281 U.S. 673,682 n. 9 (1930); Stone Container Corp. v. United States, 229 F.3d 1345,1351 (Fed. Cir. 2000), cert. denied sub nom., Smurfit-Stone ContainerCorp. v. United States, 532 U.S. 971 (2001).
Moreover, Monroe was decided in 1999. Thus, it could provide no basis for an action commenced in 1996, as this one was. We hold that compliance with the TBOR is the exclusive means to a franchise-tax refund, and we hereby overrule Monroe and Rinehart to the extent that they are inconsistent with this holding. Our holding is compelled by our sovereign-immunity jurisprudence and does not constitute a Reich
"bait-and-switch." The reasonable taxpayer contemplating a forum for franchise-tax refunds had no reason to believe that a direct action against the State was permitted under Alabama law. The TBOR isjurisdictional on its face. See § 40-2A-7(c)(5)c.; § 40-2A-9(g)(1).
In this connection, the Commissioner asserts that approximately 2,500 foreign corporations — including the plaintiffs in South CentralBell Telephone Co. v. Alabama, 526 U.S. 160 (1999) 119 S.Ct. 1180,143 L.Ed.2d 258 *Page 154 
(1999) — have properly invoked the TBOR in their quest for refunds. For all that appears, ACC may still prosecute its individual
claim for refunds in the proceeding it commenced under the TBOR before it joined this action. What the Taxpayers may not do is prosecute this
action.
Federal due process does not require Alabama to permit a direct action against the State for a tax refund. South Cent. Bell Tel. Co. v. State,789 So.2d 147, 149 (Ala. 2000) (under McKesson Corp. v. Division ofAlcoholic Beverages Tobacco, 496 U.S. 18 (1990), it is not a violation of due process for a State to "bar a refund to a taxpayer that did not follow a state procedural law in seeking the refund"). Cf.Waldron v. Collins, 788 F.2d 736 (11th Cir. 1986) (Tax Injunction Act does not require states to provide taxpayer relief through a class action);Melof v. Hunt, 718 F. Supp. 877, 884 (M.D.Ala. 1989) (same).
 III. Conclusion
For the foregoing reasons, we hold that the Taxpayers' class action seeking a refund of franchise taxes paid pursuant to Alabama's invalid statutory scheme is an action against the State as that concept is expressed in § 14. If, "at any stage of the proceedings," the trial court, or this Court, "becomes convinced that [the action] is a suit against the State and contrary to Sec. 14 of the Constitution," it must dismiss the action. Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677,678 (1971). Because the circuit court was without jurisdiction to entertain this action, we vacate the trial court's class-certification order and dismiss the action.[3]
ORDER VACATED; ACTION DISMISSED.
Moore, C.J., and Houston, Lyons, Brown, Johnstone, Harwood, and Stuart, JJ., concur.
See, J., recuses himself.
[1] Underwood is the current Commissioner, and has been substituted for Michael L. Patterson, her predecessor, in this action, pursuant to Ala.R.Civ.P. 25.
[2] Act No. 194, entitled "An Act to Provide for the General Revenue of the State of Alabama," was "not only a general revenue act, but also adopted a revenue code that was the source of most of the `Revenue and Taxation' title, title 40, of the 1975 Code of Alabama." Childree v.Hubbert, 524 So.2d 336, 339 (Ala. 1988). Its refund sections were scattered throughout the 1940 Code, the 1958 Code (Recompiled), and the 1975 Code. The TBOR, which repealed those sections, purported to "provide equitable and uniform procedures for the operation of the department and for all taxpayers when dealing with the department." Ala. Code 1975, § 40-2A-2.
[3] In Ex parte Monroe, 723 So.2d 15 (Ala. 1998), the first appeal of this action, this Court was not apprised of Gladwin's failure to proceed under the TBOR. Thus, the Court had no reason to suspect the absence of subject-matter jurisdiction.